United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 9, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-70005

_____

ROBERT JAMES CAMPBELL

Petitioner-Appellant

versus

DOUGLAS DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

_____

Appeal from the United States District Court for
the Southern District of Texas, Houston Division
(C.A. No. H-00-3844)

_____

Before BARKSDALE, GARZA, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

In 1991, Robert James Campbell was convicted of capital murder and sentenced to death for the murder of Alexandra Rendon. On June 14, 1995, the Texas Court of Criminal Appeals affirmed Campbell's conviction and sentence on direct review. *Campbell v. State*, 910

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

S.W.2d 475 (Tex. Crim. App. 1995),[1] *cert. denied*, 517 U.S. 1140 (1996). Campbell, through counsel appointed by the Court of Criminal Appeals, filed a state habeas application raising two grounds for relief.[2] The Texas habeas court denied habeas relief as to each of Campbell's claims, and on March 8, 2000, the Court of Criminal Appeals affirmed the lower court's denial. In late 2000, Campbell filed a timely petition for writ of habeas in federal district court raising seven grounds for relief. The district court denied Campbell's petition in its entirety and refused to grant a certificate of appealability ("COA"). *Campbell v. Dretke*, H-00-3844 (S.D. Tex. March 20, 2003) [herinafter Ct. Op.]

Campbell now seeks a COA on six grounds: (1) denial of his constitutional entitlement to a lesser-included offense instruction; (2) constitutional error in instructing the jury on the conspiracy law of parties during the liability phase of his trial; (3) procedural default does not bar his claims that his trial and appellate counsel provided ineffective assistance; (4) ineffective assistance of trial counsel; (5) ineffective assistance of appellate counsel; and (6) the federal district court's denial

---

[1] The Texas Court of Criminal Appeals only selected portions of this opinion for publication. The entire case is No. 701491, slip op. (Tex. Crim. App. June 15, 1995).

[2] The two grounds for relief were: (1) Campbell was entitled to a lesser-included offense instruction for murder, felony murder, kidnapping, and aggravated sexual assault; and (2) ineffective assistance of counsel for not presenting testimony by a mitigation expert during the punishment phase.

2

of authorization for intellectual functioning testing.  We DENY Campbell's application for a COA on all of his claims.

## BACKGROUND

On January 3, 1991, Alexandra Rendon left her job at Bank One between 10:00 and 10:30 p.m.  She was wearing a white leather skirt, a cream-colored dress coat with snake skin patches on the shoulders, a high school graduation ring, an engagement ring, and a watch.  At 10:53 p.m. Ms. Rendon purchased gasoline at a Chevron station located near her place of employment.  The next day, Ms. Rendon's mother realized that her daughter was missing, and on January 5, she contacted the police about her daughter's disappearance.

On January 14, 1991, the police picked up Lawrence Thomas, Campbell's friend of three years, for questioning.  Thomas told the police that Campbell had told him that he and his friend Lewis had gotten a car from a lady at a gas station, driven her to a field, and shot and killed her.  On January 15, Thomas led the police to the field where Campbell had told him that Ms. Rendon's body was located.  On January 16, the police arrested Campbell for Ms. Rendon's murder.

At trial, the State presented several witnesses whose testimony tied Campbell to the commission of Ms. Rendon's murder. Campbell's friends Thomas, Carey Pennamon, and Jesse Criff all testified that Campbell told them that he had shot and killed a woman whose car he'd taken at a gas station.  Campbell also

3

mentioned to two friends watching a news story about Ms. Rendon's murder, Otha Norton and Sheila Robeson, that Ms. Rendon looked like the woman he'd shot and killed.

Additionally, Campbell told Thomas, Criff, and Pennamon that he'd shot at Ms. Rendon twice, hitting her the second time.  He told Pennamon that he told her to "run, bitch run" before shooting at her and told Thomas that he'd told her to walk away from the car before shooting at her.  He showed Thomas the field where he'd left Ms. Rendon's body, and described the location to Criff.  That field was where the police later recovered Ms. Rendon's body.

The police also recovered many of Ms. Rendon's belongings from Campbell's friends and family.  They recovered the coat Ms. Rendon had been wearing from Campbell's mother Wilda, the class ring and watch she had been wearing from Campbell's girlfriend Demetrius Brown,[3] and the gun used to kill Ms. Rendon from Campbell's friend Pennamon.  Pennamon testified that Campbell had asked him to hold onto the gun.  Campbell offered Ms. Rendon's white leather skirt, which Thomas had seen earlier in the car Campbell was driving, to his friends Robeson and Norton.  Robeson declined the skirt because it was dirty and Norton later threw it away.  Campbell told Pennamon that he had taken the personal belongings of the woman he had killed.  Campbell also drove numerous friends, including Thomas, Norton, and Robeson around in a car identical to Ms.

_____

[3]Pennamon had also seen Campbell wearing the ring a day or so after Ms. Rendon's disappearance.

Rendon's.

The police recovered semen of two men from Ms. Rendon's body. Campbell told Criff that he had sex with his victim and told Thomas that Leroy Lewis, who was with Campbell that night, had also had sex with her. DNA testing further determined that 85.3% of African-American males could be excluded from contributing the semen attributed to Campbell,[4] and only four percent of African-American males could have contributed the semen attributed to Lewis.

Although the draft jury charge contained instructions on felony murder, murder, aggravated kidnapping, and aggravated murder, the State objected to the inclusion of any lesser-included offense instruction. The instructions given only allowed the jury to return a verdict of not guilty or guilty of capital murder. The jury found Campbell guilty of capital murder.

## Punishment Phase

During the punishment phase, the State offered evidence of other crimes Campbell had committed. Aside from judgments of conviction against Campbell for two robberies, the State presented evidence of two other carjacking crimes he committed about the time of Ms. Rendon's disappearance. In both instances Campbell confronted persons getting into their cars, abducted them, took them to a remote location, and stole their personal possessions.

---

[4] The degraded nature of the DNA prevented more accurate results.

5

In one instance, Campbell ordered the victim to walk away from the vehicle and shot at him twice, missing both times. In the other, Campbell's accomplice talked him out of his plan to shoot the female victim and drown her son in a nearby lake.

The defense called three family members and a friend to testify on Campbell's behalf. They testified that Campbell was remorseful, needed rehabilitation, was loved by his family, and would not be a future danger to society. On May 21, 1991, the jury answered Texas' special issues in a manner requiring the imposition of a death sentence.

## DISCUSSION

Campbell's § 2254 habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because he filed his petition after its enactment. *See* Pub. L. No. 104-132, 100 Stat. 1214; *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under AEDPA, Campbell may not appeal the district court's denial of habeas relief until he has obtained a COA. 28 U.S.C. § 2253(c)(1) (2000); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

To obtain a COA, Campbell must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack*, 529 U.S. at 483. Making such a showing requires Campbell to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in

6

a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). Our analysis "requires an overview of the claims in the habeas petition and a general assessment of their merit." *Id.* Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997).

Where the lower court denied Campbell's claims on procedural grounds, a COA should issue only if Campbell demonstrates both that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In our review of the district court's determinations, we must take into consideration that § 2254(d) of AEDPA requires a district court to defer to a state court's adjudication of a petitioner's claims on both pure questions of law and mixed question of law and fact unless the state court's determination was "contrary" to or an "unreasonable application" of clearly established federal law as determined by the Supreme Court. *See Hill v. Johnson*, 210 F.3d 481, 488 (5th Cir. 2000). A state court's decision is contrary to

7

clearly established federal law when it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Miniel v. Cockrell*, 339 F.3d 331, 337 (5th Cir. 2003). Additionally, we must defer to the state court's factual findings unless they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state court's factual findings are presumed to be correct and petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. 2254(e)(1).

## I. Lesser-Included Offense

Campbell first seeks a COA on his claim that the state court violated his due process rights as provided by the Supreme Court in *Beck v. Alabama*, by not giving the jury a lesser-included offense instruction for the crimes of sexual assault, kidnapping, felony murder, and murder, when the evidence would support such a verdict. 447 U.S. 625 (1980). On review of an Alabama statute that prohibited a lesser-included offense instruction in capital cases, the Supreme Court stated that:

> [W]hen the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense-but leaves some doubt with respect to an element that would justify a conviction of a capital offense-the failure to give the jury the "third option" of convicting of a lesser-included offense would seem inevitably to enhance the risk of unwarranted conviction.

8

*Id.* at 637. However, "due process requires that a lesser-included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982). Thus, a lesser-included offense instruction will only be merited when "the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Jones v. Johnson*, 171 F.3d 270, 274 (5th Cir.), *cert. denied*, 120 S. Ct. 29 (1999).

The Fifth Circuit's interpretation of *Beck* requires a trial court judge to consider all of the evidence in the case as a whole in determining whether a rational jury could have found the defendant not guilty of capital murder but guilty of a lesser-included offense. *Ransom v. Johnson*, 126 F.3d 716, 726 (5th Cir. 1997); *United States v. Harrison*, 55 F.3d 163, 167 (5th Cir. 1995); *Montoya v. Collins*, 955 F.2d 279, 286 (5th Cir. 1992).

Fifth Circuit precedent has held that the determination of whether a defendant is entitled to a lesser-included offense instruction is a factual determination made by the state court and to be entitled to habeas relief, a petitioner must rebut the state's holding under the "clear and convincing evidence" standard contained in § 2254(e)(1). *Dowthitt v. Johnson*, 230 F.3d 733, 757 (5th Cir. 2000), *Robertson v. Johnson*, 234 F.3d 890, 898 (5th Cir.

9

2000).[5]  We will address each requested lesser-included offense charge that Campbell was denied.

   1. *Aggravated Sexual Assault or Kidnapping but not Capital Murder*

Campbell contends that a rational jury could have found that he kidnapped and raped Ms. Rendon but still have reasonable doubt as to whether he killed her.  Thus, he argues that the Texas state trial court violated his due process rights under *Beck* when it did not instruct the jury on the offenses of aggravated sexual assault and kidnapping.  To support this contention, Campbell relies on the medical examiner's testimony that the body's decomposition would have been expected to reach a more advanced stage if it had been lying where it was discovered from January 3 until January 15.  Based on the examiner's testimony, Campbell argues, the jury could have rationally found that although Campbell kidnapped or sexually assaulted Ms. Rendon while stealing her car on January 3, someone other than Campbell may have killed her and left her body in the

_____

   [5] There is, however, a debate as to whether it is correct to classify the issue of whether a defendant was entitled to a lesser-included offense instruction as a question of fact or a question of law.  *See Bryson v. Ward*, 187 F.3d 1193, 1211 (10th Cir. 1999) (Briscoe, J., concurring) (arguing that whether a defendant is entitled to a lesser-included offense instruction is a mixed question of fact and law).  If we were to analyze this issue as a mixed question of law and fact we would apply § 2254(d)(1) to decide whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  Because we find that Campbell is not entitled to a COA under either standard and we are bound by Fifth Circuit precedent, we do not resolve the debate in this case.

field on a date subsequent to January 3, because her body would have sustained more decomposition if she had been killed and left in the field on January 3.

Although the district court stated that the medical examiner testified "that the body's decomposition would have been expected to reach a more advanced stage...unless the temperature was cool," Ct. Op. at 37, the medical examiner actually said that even if the temperature was cool "there would be changes more than what we have here." St. Rec. Vol. 59 at 519-20. Campbell also argues that aggravated sexual assault and kidnapping instructions were warranted because the murder weapon was discovered in Pennamon's possession rather than in Campbell's.

It is not disputable that Campbell failed to present "clear and convincing evidence" to rebut the state court's determination that he was not entitled to a lesser-included offense instruction. *Dowthitt*, 230 F.3d at 757-58. The evidence before the jury showed that in the days following Ms. Rendon's disappearance, Campbell repeatedly bragged to multiple friends that he had shot and killed Ms. Rendon, and he was seen wearing her class ring. Moreover, he gave her dirty clothing to his friends and family. Considering these admissions, in light of the whole record, jurists of reason would agree that a rational jury could not have found Campbell guilty of sexual assault or kidnapping without also finding him guilty of murder. Only by a contorted and irrational view of the evidence could the jury have found that Campbell kidnapped or

11

sexually assaulted her and took her belongings on the day she disappeared, but that she was murdered by an unidentified person afterwards, although Campbell repeatedly bragged about being the killer. We therefore deny Campbell's request for a COA on this claim.

2. *Felony Murder but not Capital Murder*

Campbell next contends that the jury may have rationally found him guilty of felony murder rather than capital murder because it could have had a reasonable doubt that he intended to kill Ms. Rendon. Felony murder is a lesser-included offense of capital murder. *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999). The distinguishing element between the two crimes is the "intent to kill." *Id*. Therefore, Campbell is only entitled to a lesser-included offense instruction on felony murder if he can show that the jury could rationally have found Ms. Rendon's homicide unintentional.

Campbell argues that the evidence shows that he shot at Ms. Rendon with only the intent to terrify or wound her. In support of this argument, Campbell points to the following facts: (1) the scene of the murder was likely pitch black; (2) Campbell told Ms. Rendon to run into the darkness, which would have made it more difficult for him to shoot her; and (3) the bullet wound on Ms. Rendon's body was located on her upper hip rather than her head. Of that evidence, the Texas court found that the only evidence that

12

tended to support Campbell's theory was his claim that the shooting occurred when it "may have been 'pitch black,'" and that a rational jury could have found that the darkness obscured his target to the extent that his hitting her was unintentional. As the district court explained, however, giving Ms. Rendon a chance to run into the darkness before shooting her may have added "a sadistic element of sport into the murder," but not grounds for reasonable doubt as to Campbell's intent to kill Ms. Rendon. Ct. Op. at 32.

It is not debatable that the fact that it was dark when Campbell shot Ms. Rendon is not sufficient clear and convincing evidence to rebut the state court's factual determinations. Similarly, no reasonable jurist could argue, given the evidence, that a rational jury could have found Campbell guilty of felony murder but not capital murder; and it therefore cannot be reasonably maintained that the state habeas court unreasonably applied clearly established federal law. We therefore deny Campbell's request for a COA on this issue.

3. *Murder but not Capital Murder*

Campbell next contends that a properly instructed jury may have rationally found him guilty of murder but not capital murder because the jury could have had a reasonable doubt as to whether Campbell intentionally caused Ms. Rendon's death during the commission or attempted commission of aggravated sexual assault or kidnapping. Under Texas law, murder is defined as "intentionally or knowingly caus[ing] the death of an individual." TEX. PEN. CODE

13

§ 19.02(b)(1).  Under Texas law, murder is a lesser-included offense of capital murder, which requires that a defendant intentionally cause the death of another while in the course of committing or attempting to commit some other crime such as aggravated sexual assault or kidnapping.  TEX. PEN. CODE § 19.03(a)(2); *Ex Parte McClelland*, 588 S.W.2d 957, 959 (Tex. Crim. App. 1979).

### A. Aggravated Sexual Assault

Campbell argues that the jury could have harbored a reasonable doubt with regard to whether he committed aggravated sexual assault based on the following evidence: (1) Campbell told Thomas that Lewis had raped Ms. Rendon, but did not confess to raping her himself; and (2) while Campbell consented to providing the state with body tissue and fluid samples, Lewis refused.

It is not maintainable that the evidence that Campbell, in his conversation with Lewis, neither volunteered nor denied that he had raped Ms. Rendon and that he provided a blood sample without the state obtaining a warrant, rebuts the state court's findings by the clear and convincing evidence.  *Dowthitt*, 230 F.3d at 757. Similarly, it is not maintainable that the state habeas court's holdings were unreasonable in light of clearly established federal law.  Specifically, no rational jury could have convicted Campbell of murdering Ms. Rendon but not sexually assaulting her.  We therefore deny a COA on this issue.

### B. Kidnapping

14

Campbell argues that there was sufficient basis for a rational jury to find that he killed Ms. Rendon without kidnapping her because of Thomas' testimony that Campbell said Ms. Rendon complied when he "just told her to get in [her car]" with Campbell and Lewis at the gas station, St. Rec. Vol. 58 at 145-46, because it tends to create a doubt as to whether Campbell made her leave the gas station with him by means of force, intimidation, or deception, as would be required under Texas law to uphold a verdict of kidnapping. As the district court properly noted, however, before Thomas so testified, he had earlier told the police that Campbell told him that he forced Ms. Rendon into the car. Furthermore, as the district court properly explained:

> Logic defies the assumption that Ms. Rendon, a bank employee who stopped to get gasoline in her car after leaving work at night, would voluntarily get into her vehicle with two strangers, having not met them before and with at least one of them carrying a gun, and then proceed to an out-of-the-way location merely because one of the men "just told her to get in it."

Ct. Op. at 36.

We agree. It cannot be maintained that Campbell presented clear and convincing evidence rebutting the state court's findings. Similarly, it is not maintainable that the state habeas court's holding was unreasonable in light of clearly established federal law. We therefore deny a COA on this issue.

## II. Jury Instructions on The Law of Parties During The Liability Phase

Campbell's next request for a COA relies on the Supreme Court's holding in *Enmund v. Florida* that it violates the Eighth

15

Amendment to execute someone for aiding in a murder that he himself did not commit.  458 U.S. 782 (1982).  He argues that based on the holding in *Enmund*, he is entitled to a COA on the issue of whether the inclusion of the "law of the parties" charge during the guilt-innocence phase of trial led to a constitutional error during the punishment phase.  *Id.*  Campbell argues that the trial court's instructions created a substantial risk that the jury answered the special issues requiring imposition of the death penalty upon Campbell without finding that Campbell killed, intended to kill, or intended that a killing take place as required for a death sentence to comport with the Eighth Amendment.  *Id*.

Over Campbell's objection, the charge submitted to the jury during the guilt-innocence phase contained the following instruction:

> If, in an attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though  having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of conspiracy.

St. Rec. Vol. 1 at 185.

During the punishment phase the trial court judge did not give the jury an "anti-parties" instruction, specifying that conspiratorial liability does not apply to the punishment phase and that Campbell should not get the death penalty unless he personally killed Ms Rendon.

16

Language identical to the language contained in the first special issue in the instant case, however, has been held to include the requirement of a jury finding of individual liability during the punishment phase.[6] *Beyleu v. Scott*, 67 F.3d 535, 543 (5th Cir. 1995); *Andrews v. Collins*, 21 F.3d 612, 630-31 (5th Cir. 1995). Furthermore, "th[e] structure of the punishment phase reasonably lead[s] the jury to assume the law of the parties was not applicable during this phase." *Westley v. Johnson*, 83 F.3d 714, 723 (5th Cir. 1996).

Campbell's attempts to distinguish prior Fifth Circuit cases because the trial court judge instructed the jury to consider evidence from both phases "in accordance with the previous instructions of the court"[7] fail for the three reasons clearly stated by the district court. First, the jury instructions during the punishment phase told the jury to make an "individualized determination...of the personal culpability of...Campbell." St. Rec. Vol. 1 at 225. Second, the closing arguments by both sides

---

[6] Special Issue No. 1 asked:
Was the conduct of the defendant, Robert James Campbell, that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?
This Court, in *Beyleu v. Scott*, 67 F.3d 535, 543 (5th Cir. 1995), and *Andrews v. Collins*, 21 F.3d 612, 630-31 (5th Cir. 1994), found that asking whether "the conduct of defendant was committed deliberately and with the expectation that death would result" in the special issue requires the finding of individual liability.

[7] St. Rec. Vol. 1 at 227.

informed the jury that deliberations during the punishment phase must focus on Campbell's conduct alone. Finally, the evidence before the jury contained few details about Lewis' personal culpability in crimes other than rape of the victim.

As for Campbell's argument that the trial court erred by not including a conspiracy instruction in the application portion of the jury charge, as the district court noted, Campbell does not cite any case finding a federal right to such instruction and Campbell is unable to tie the application paragraph to a federal *Enmund* right. Because reasonable jurists would not debate the correctness of the district court's determination that the Texas habeas court's decision did not involve an unreasonable application of clearly established federal law, we deny Campbell a COA on this issue.

III. <u>Procedural Default of Ineffective Assistance of Counsel Claims</u>

In district court, Campbell asserted a habeas claim based on ineffective assistance of his trial and appellate counsel on three grounds. Campbell concedes that he did not raise in state court: (1) trial counsel's failure to object to, and request limiting instructions regarding, the admission of certain hearsay testimony; and (2) appellate counsel's failure to raise several points of error on direct appeal in state court.[8] He recognizes that 28 U.S.C. § 2254(b) requires him to present and exhaust any habeas

---

[8] We discuss the third ground below.

18

claim he may have in state court before bringing a habeas claim on those grounds in federal court.[9] Campbell argues, however, that he can overcome that default by demonstrating cause for the defaults and actual prejudice, which would excuse his procedural default.[10] *Ogan v. Cockrell*, 297 F.3d 349, 356 (5th Cir.), *cert. denied,* 537 U.S. 1040 (2002).

To establish cause, Campbell asserts that his state appointed counsel was ineffective in not raising those claims of ineffective counsel in Campbell's state habeas proceedings. He argues that although there is no Sixth Amendment right to effective habeas counsel, because Texas law provides for state appointed habeas counsel,[11] a due process right attaches to that state-created right and protects Campbell from an arbitrary deprivation of that right. He bases his argument on the Supreme Court's decision in *Coleman v. Thompson*, 501 U.S. 722 (1991), which held that an inmate generally has no right to effective representations in post-conviction proceedings, but expressly did not reach the question of whether that reasoning also applied when the state habeas forum is the

---

[9] Because Campbell has already brought a request for habeas in state court, however, Texas' abuse-of-the-writ doctrine would prevent the presentation of these claims in a successive habeas application. *See* TEX. CODE CRIM. PRO. art. 11.071 § 5(a).

[10] Campbell does not rely on the "manifest injustice" exception to procedural bar.

[11] TEX. CODE CRIM. P. art § 2(a) states that a person seeking habeas relief from imposition of the death penalty: "shall be represented by competent counsel unless the applicant has elected to proceed pro se...."

"first forum in which a federal claim can be raised." *Id.* at 750.

Campbell is correct that the Supreme Court left that question unanswered. As the district court properly noted, however, the Fifth Circuit has consistently rejected the argument that compliance with Texas' statutory provision guaranteeing the appointment of "competent" counsel in state habeas proceedings mandates constitutionally effective representation even where, as here, state habeas proceedings are the first forum in which petitioner could assert such claims. *Ogan*, 297 F.3d at 357; *Martinez v. Johnson*, 255 F.3d 229, 245 (5th Cir. 2001); *In re Goff*, 250 F.3d 273, 274-76, (5th Cir. 2001). This Court has clearly stated that "ineffective assistance of habeas counsel cannot provide cause for a procedural default." *Martinez*, 255 F.3d at 241.

Other Circuits to address this issue similarly found insufficient "cause" for a procedural default based purely on a habeas petitioner's collateral counsel's ineffectiveness. *See Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997); *Hill v. Jones*, 81 F.3d 1015, 1024-26 (11th Cir. 1996); *Bonin v. Calderon*, 77 F.3d 1155, 1159-60 (9th Cir. 1996); *Nolan v. Armontrout*, 973 F.2d 615, 616-17 (8th Cir. 1992). Accordingly, we conclude that jurists of reason could not debate whether Campbell has made out a claim of cause for his procedural default. The district court did not err in denying Campbell a COA on the issue of ineffective

assistance of trial and appellate counsel.  We therefore deny a COA on Campbell's claims that his counsel failed to object and request limiting instructions regarding the admission of certain hearsay testimony and failed to raise several points of error on direct appeal.

IV. <u>Ineffective Assistance During the Punishment Phase</u>:

Campbell argues that he did present his third claim of ineffective assistance of counsel in state court.  He requests a COA on the issue of whether he received constitutionally ineffective assistance of counsel because his trial counsel did not do an adequate investigation of mitigation evidence for the punishment phase.  In support of his claim, Campbell presents affidavits by friends and family members describing Campbell's abused childhood and stating that Campbell's attorneys had not previously asked them about his childhood.  The state argues, and the district court found, that Campbell's claim on this issue is procedurally barred because he did not present those affidavits in state court.  Because the lower court denied Campbell's claims on procedural grounds, a COA should issue only if Campbell demonstrates that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

*Exhaustion of Remedies in State Court?*

21

"The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court" so that a state court has had a "fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim." *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004).

Exhaustion inquiries are case and fact-specific and "dismissal is not required when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts." *Anderson v. Johnson*, 338 F.3d 382, 387 n.8 (quoting *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994)). But "[s]ubstantial evidence rising to a '180 degree turn' will render a claim unexhausted." *Id.* at 389 n.26. Furthermore, a petitioner has not exhausted his state claim when he offers material additional factual allegations and evidentiary support to the federal court that were not presented to the state court. *Dowthitt*, 230 F.3d at 746; *Barrientes v. Johnson*, 221 F.3d 741, 761 (5th Cir. 2000); *Graham v. Johnson*, 94 F.3d 958, 968-69 (5th Cir. 1996).

Although Campbell's state habeas petition stated that his trial counsel did not do an adequate mitigation investigation, the claim was in the context of arguing that counsel should have presented the testimony of a mitigation specialist during the punishment phase of Campbell's trial. Specifically, in the state

habeas proceedings Campbell argued that he was:

> [D]enied effective assistance of counsel during the punishment phase of his trial when trial counsel failed to adequately investigate [his] history, when such historical information was essential in the preparation of a biopsychological assessment by an expert in the area of mitigation, thereby denying [Campbell] the opportunity to present mitigating evidence during punishment.

His petition failed to allege what specific facts such an investigation would have uncovered in Campbell's case or any facts tending to show that Campbell's trial attorney did not investigate Campbell's background. He relied solely on the fact that his state trial counsel did not present a mitigation expert's testimony.

The state habeas court found that Campbell's trial counsel's strategy to not use a mitigation expert was reasonable and that trial counsel did present evidence of Campbell's background that was within the scope of the special issues submitted to the jury during the punishment phase. Because in the state habeas proceedings Campbell did not allege any other facts tending to show that Campbell's trial lawyer failed to investigate his background, the state habeas court did not perform any further analysis. Although Campbell now faults the state habeas court for not holding an evidentiary hearing, he gave no indication to the state court that he had any evidence that Campbell's state trial counsel did not investigate Campbell's background.

Before the federal district court, Campbell argued not that his state trial counsel should have investigated his background for

the purpose of presenting expert testimony, but alleged more broadly that trial counsel was not adequately informed as to Campbell's background. For the first time in federal court Campbell submitted affidavits by Campbell's family and friends stating that Campbell's state trial counsel did not ask them about Campbell's background and describing various aspects of Campbell's childhood. Campbell's state habeas counsel did not make any of these allegations. Thus, as the district court explained, because Campbell's claim in federal court did "not focus on counsel's preparation of information to be used by an expert, but the preparation of substantive evidence for trial...The expanded breadth and divergent focus render Campbell's current habeas claim unexhausted." Ct. Op. at 57.

Because Campbell's state habeas claim only briefly mentioned counsel's failure to investigate Campbell's background and instead focused on counsel's failure to present testimony from a "mitigation expert," Campbell's claim took a "180 degree turn" in federal court when he presented for the first time specific factual allegations that Campbell's state habeas counsel did not investigate his background and allegations of the facts they would have uncovered if they had. *See Anderson*, 338 F.3d at 389 n. 26, *Dowthitt*, 230 F.3d at 746; *Graham*, 94 F.3d at 968. For those reasons, reasonable jurists would not find debatable that the state court did not have a "fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional

24

claim" when Campbell presented no specific facts of a failure to investigate Campbell's background to the state court. *Soffar*, 368 F.3d at 465. Because Campbell's arguments attempting to establish "cause" for and "prejudice" from his procedural default are no different than the arguments he asserted for his other claims of ineffective assistance of counsel, they fail for the same reasons. We therefore deny Campbell's request for a COA on this issue.

V. Authorization for IQ testing

Finally, Campbell requests a COA on the issue of whether the district court erred by not giving him funding to pursue his IQ testing. Campbell's original state and federal habeas petitions did not allege that he was mentally retarded. Almost two years after Campbell filed for habeas relief in federal court, the Supreme Court held in *Atkins v. Virginia* that execution of mentally retarded individuals is unconstitutional. 536 U.S. 304 (2002). Prompted by that ruling, Campbell filed a successive state writ application claiming for the first time that his death sentence was invalid under *Atkins* because he was mentally retarded. After the Texas Court of Criminal Appeals dismissed Campbell's subsequent application as an abuse of the writ, Campbell filed a motion in this Court requesting authorization to file a successive federal habeas petition pursuant to the "new rule" exception contained in 28 U.S.C. § 2244(b)(2)(A). This Court denied Campbell's request when it found that Campbell had not stated a *prima facie* case of

25

mental retardation under *Atkins* because he presented no evidence of impaired mental functioning but only that he was "at risk" of being mentally retarded. *In re Campbell*, 82 Fed. Appx. 349, 351 (5th Cir. 2003).

After this Court denied Campbell's request for authorization to file a successive habeas petition, Campbell filed a motion with the district court requesting funds for IQ testing under 21 U.S.C. § 848(q)(9).[12] The district court denied Campbell's motion on the grounds that he could not authorize public funds for the prosecution of a theory that the Court of Appeals has found insufficient to support the filing of a successive habeas petition.

A lower court's denial of a motion for authorization of funds is reviewed for abuse of discretion. *Riley v. Dretke*, 362 F.3d 302, 304 (5th Cir. 2004). To be entitled to IQ testing, Campbell must "show that he is indigent and that the requested assistance is 'reasonably necessary' for his representation." *Id.* at 307. And to be entitled to additional discovery, Campbell must show "good cause." *Hill*, 210 F.3d at 487; Rules Governing § 2254 Cases, Rule 6(a). "Good cause" generally exists when a habeas petitioner has "establish[ed] a prima facie claim for relief." *Id.* (quoting *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000)). Because

---

[12] Section 848(q)(9) allows for the court to "authorize [public funds for] a [capital] defendant's attorney to obtain services" that are "reasonably necessary for the representation of the defendant." 21 U.S.C. § 848(q)(9).

this court previously ruled that Campbell failed to make out a *prima facie Atkins* claim and was therefore not entitled to file a successive habeas petition before Campbell requested funds to further investigate his claim, reasonable jurists would not find it debatable that the district court did not abuse its discretion when it denied Campbell funding for IQ testing. We therefore deny a COA on this issue.

## CONCLUSION

For these reasons, we DENY Campbell's application for a COA on all of his claims.