**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2009

Charles R. Fulbruge III
Clerk

No. 09-70007

PETER ANTHONY CANTU,

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas, Houston
No. 4:07-CV-3016

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Petitioner Peter Anthony Cantu, a Texas inmate, was convicted of capital murder and sentenced to death. After unsuccessfully appealing his conviction in state court and failing to obtain state post-conviction relief, Cantu filed a petition for habeas corpus in the United Stated District Court for the Southern District of Texas. In a thorough and well-reasoned memorandum and order, the district court denied habeas relief and, sua sponte, declined to issue a certificate

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of appealability on any of the issues raised by Cantu. Pursuant to 28 U.S.C. § 2253(c), Cantu now seeks from this court a certificate of appealability. For the following reasons, we deny a certificate of appealability on all of the issues that he raises.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1994, a Texas jury convicted Peter Cantu of capital murder and sentenced him to death for the murder of Jennifer Ertman. While a complete account of the facts is available in the district court's memorandum and order denying Cantu's federal habeas petition, we briefly summarize the grisly details that led to Cantu's conviction. On June 24, 1993, Cantu and other members of the Black and White gang met to initiate a new member. After the initiation concluded, two girls—Jennifer Ertman and Elizabeth Pena—stumbled upon the group. Members of the gang, including Cantu, then began a vicious sexual assault of the girls. After the assault, the gang took the girls into the woods and strangled them. At one point, Cantu kicked Ms. Pena in the face with his steel-toed boot. He and other gang members also stood on the girls' necks to ensure they died. Once dead, the girls' bodies were left in the woods, and the gang members proceeded to Cantu's home, where they bragged of their crime to Cantu's brother and sister-in-law. Days later, Cantu's brother and sister-in-law reported what they had heard to the police. The police were then able to find the badly decomposed remains of Ms. Ertman and Ms. Pena. All of the participants were then arrested, and, while in custody, Cantu provided two written statements to the police. In the first statement, Cantu only admitted his role in raping and stealing from the girls, but he was silent as to their murder. After police informed Cantu that one of the other participants fully confessed, Cantu gave his second statement, in which he described how both girls were killed.

The Texas Court of Criminal Appeals affirmed Cantu's conviction in a direct appeal on January 29, 1997. *Cantu v. State*, 939 S.W.2d 627 (Tex. Crim.

App. 1997). Cantu then sought state post-conviction relief. The state trial court denied such relief on June 7, 2006, after it adopted the prosecution's proposed findings of fact and conclusions of law. On December 13, 2006, the Texas Court of Criminal Appeals likewise denied Cantu's state habeas application after it adopted the trial court's findings of fact and conclusions of law in an unpublished order. *Ex parte Cantu*, No. 65,334-01 (Tex. Crim. App. Dec. 13, 2006).

Cantu then filed a habeas petition in the United Stated District Court for the Southern District of Texas. On February 4, 2009, the district court denied habeas relief in a particularly thoughtful and thorough memorandum and order. *Cantu v. Quarterman*, No. H-07-CV-3016, 2009 WL 275172 (S.D. Tex. Feb. 4, 2009). Additionally, the district court denied a certificate of appealability ("COA"), sua sponte, on all of the issues raised by Cantu.

Now, Cantu seeks a COA on five of the issues he raised below. For the following reasons, we decline to issue a COA on any of those issues.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires a petitioner to obtain a COA in order to appeal the district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). We may issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Whether to grant a COA is a "threshold inquiry" that involves "an overview of the claims in the habeas petition and a general assessment of their merits" but "does not require full consideration of the factual or legal bases adduced in support of the claims." *Id*. at 336. That said, we resolve any doubts as to whether a COA should issue in the petitioner's favor

when the death penalty is involved. *Johnson v. Quarterman*, 483 F.3d 278, 285 (5th Cir. 2007).

Because our analysis involves a review of the district court's resolution of Cantu's constitutional claims, we must take account of the deferential lens through which the district court evaluated those claims. Under AEDPA, habeas relief is unavailable on any claim adjudicated on the merits in state court unless the state court's adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). With the circumscribed nature of our review in mind, we now turn to the merits of Cantu's petition.

## III. DISCUSSION

Cantu seeks a COA on five issues: (1) whether due process requires the state trial court to inform the jury that, if sentenced to life in prison instead of death, Cantu would be eligible for parole after thirty-five years; (2) whether the district court's determination not to instruct the jury on lesser-included offenses violated the Eighth Amendment; (3) whether the way Texas places mitigating evidence before the jury violates the Eighth Amendment;[1] (4) whether Cantu was rendered ineffective assistance of counsel because his trial counsel did not object on due process grounds to the trial court's admitting photographs that depicted the victims' bodies and the crime scene; and (5) whether Cantu was rendered ineffective assistance because his trial counsel did not object to the

---

[1] Below, Cantu additionally argued that the prosecution's sentencing-phase argument improperly limited the jury's consideration of mitigating evidence; however, he has conceded that argument in his present petition and, so far as his mitigation argument is concerned, seeks a COA only on whether Texas's method of presenting mitigation evidence to the jury is unconstitutional.

prosecution's sentencing-phase argument urging the jury to consider those photographs.

## A.    Parole Eligibility

Cantu first argues that the state trial court's refusal to inform the jury of Texas parole law violates the Fourteenth Amendment's Due Process Clause. Specifically, Cantu challenges the trial court's preventing him from informing the jury that, based on Texas law at the time, he would be eligible for parole in thirty-five years were he sentenced to life in prison as opposed to death. At bottom, Cantu urges this court to extend the holding in *Simmons v. South Carolina*, 512 U.S. 154 (1994), to the circumstances in this case. We decline to do so.

In concluding that the state court did not unreasonably apply clearly established federal law, the district court explained *Simmons*'s limited holding—that "when 'the alternative sentence to death is life without parole . . . due process plainly requires that [the defendant] be allowed to bring [parole ineligibility] to the jury's attention.'" *Cantu*, 2009 WL 275172, at *6 (quoting *Simmons*, 512 U.S. at 169) (omission and alterations in original). The district court highlighted that the Supreme Court has itself refused to extend *Simmons*'s holding beyond "when, assuming the jury fixes the sentence at life, the defendant is *ineligible* for parole under state law." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (emphasis added). Indeed, this circuit has repeatedly refused to apply *Simmons* so as to require that Texas juries be informed of a defendant's future parole eligibility. *See, e.g.*, *Thacker v. Dretke*, 396 F.3d 607, 617 (5th Cir. 2005); *Elizalde v. Dretke*, 362 F.3d 323, 332–33 (5th Cir. 2004); *Woods v. Cockrell*, 307 F.3d 353, 361 (5th Cir. 2002). Thus, reasonable jurists would not—and have not—disagreed with the district court's resolution of this claim, and we deny a COA as to this issue.

## B.   Lesser-Included Offenses

Second, Cantu asserts that the Eighth Amendment's proscription of cruel and unusual punishment was violated by the trial court's refusal during the guilt–innocence phase to instruct the jury on three lesser-included offenses: sexual assault, robbery, and kidnapping.[2] Cantu bases his claim on the Supreme Court's decision in *Beck v. Alabama*, 447 U.S. 625 (1980).

The Supreme Court held in *Beck* "that a state cannot impose a blanket ban on lesser-included-offense instructions in capital cases. Subsequent decisions by this court have consistently held that a state trial court may not, under *Beck*, refuse a lesser-included-offense instruction 'if the jury could rationally acquit on the capital crime and convict for the noncapital crime.'" *East v. Scott*, 55 F.3d 996, 1005 (5th Cir. 1995) (internal citation omitted) (quoting *Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir. 1988)); *see also Aguilar v. Dretke*, 428 F.3d 526, 531 (5th Cir. 2005).  While this standard may be met if the evidence would permit a finding contrary to that establishing Cantu's participation in the actual murders, *see Aguilar*, 428 F.3d at 531, our "interpretation of *Beck* requires a trial court judge to consider *all of the evidence* in the case as a whole in determining whether a rational jury could have found the defendant not guilty of capital murder but guilty of a lesser-included offense," *Campbell v. Dretke*, 117 F. App'x 946, 952 (5th Cir. 2004) (emphasis added); *cf. United States v. Branch*, 91 F.3d 699, 713 (5th Cir. 1996) (in discussing the amount of evidence that is sufficient to require an instruction on self defense, the court considered *Beck* and other cases addressing lesser-included-offense instructions and stated that "it is not enough that an item of evidence viewed alone and unweighed against all the evidence supports" the instruction sought by the defendant).  Cantu's assertion,

---

[2] Cantu additionally argued to the district court that he was entitled to a lesser-included instruction on simple murder; however, he does not argue that he is entitled to such an instruction in his petition for COA.

however, invites us to look only at a single item of evidence and to ignore all of the remaining evidence in the case.

Cantu contends that a rational jury could look only at his first written statement—in which he admitted to kidnapping, robbing, and sexually assaulting the girls but omitted any mention of killing them—and convict him of only the lesser-included crimes. The district court, as did the state court, placed Cantu's first statement into the context of all the record evidence and determined that a rational jury would not have concluded that Cantu was guilty only of the lesser-included offenses. To the extent Cantu's reliance on his first statement requires disbelieving his second statement in which he admitted to the killings, he failed to produce significant evidence calling the legitimacy of his second statement into question: he showed no constitutional or statutory violation in the taking of the statement, and he offered no trial testimony challenging the accuracy of his second statement. Further, the overwhelming balance of evidence adduced at trial corroborated Cantu's second statement: (1) Roman Sandoval, a fellow gang member, stated that Cantu called him and confessed to the murders; (2) additional gang members stated that they were "following whatever Peter Cantu was doing"; (3) Venancia Medellin, a gang member, testified that after he raped Ms. Ertman, Cantu whispered in his ear that "[w]e're going to have to kill them," and that Cantu then directed the gang to bring the girls into the woods; and (4) while some of the gang members, including Cantu, recounted the events of that evening to Cantu's older brother Joe and his wife Christina, one gang member described how Cantu "kicked one of the girls in the face with his steel toe[] [boots]" while Cantu commented that "[t]he bitch wouldn't die so I stomped on her neck" and that the girls "had to die [so] they couldn't identify them."

Based on all of this evidence, the state court determined that a reasonable jury would not acquit Cantu of capital murder and convict him of the lesser-

7

included offenses. The district court determined that this conclusion was not an unreasonable application of federal law. In light of the district court's thorough analysis, we cannot say that reasonable jurists would disagree with that determination and, therefore, deny a COA on this issue.

**C.   Texas's Mitigating Evidence Instruction**

Cantu next asserts that the method by which the Texas Code of Criminal Procedure presents the issue of mitigating evidence to a sentencing jury improperly prevents the consideration of constitutionally relevant evidence. The district court concluded that the state court's rejection of this argument was not an unreasonable application of federal law, and we conclude that reasonable jurists would not disagree with that determination.

Texas presents the question of mitigating evidence to a jury through article 37.071, sections 2(e)(1) and 2(f)(4) of the Texas Code of Criminal Procedure. At the time of Cantu's trial, § 2(e)(1) stated:

> The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b), it shall answer the following issue:
>
> > Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

TEX. CODE CRIM. PROC. art. 37.071, § 2(e)(1) (1991). Section 2(f)(4) stated:

> The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury:
>
> \*   \*   \*
>
> shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.

*Id.* § 2(f)(4). Contrary to Cantu's argument, we have previously concluded that this language does not prevent the jury from considering relevant, mitigating evidence. *See Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001) ("The definition of mitigating evidence does *not* limit the evidence considered under the third special issue (whether mitigating circumstances warrant a life, rather than a death, sentence)."); *see also Roach v. Quarterman*, 220 F. App'x 270, 277 (5th Cir. 2007); *Jackson v. Dretke*, 181 F. App'x 400, 413–14 (5th Cir. 2006); *O'Brien v. Dretke*, 156 F. App'x 724, 735–36 (5th Cir. 2005). The Supreme Court has also expressed approval of this method of instructing the jury concerning the consideration of mitigating evidence. *See Penry v. Johnson*, 532 U.S. 782, 803 (2001) (using the "clearly drafted catchall instruction" of Texas Code of Criminal Procedure article 37.071 § 2(e)(1) as a frame of reference to compare its "brevity and clarity" against the confusing nature of the supplemental instruction given in that case). Thus, reasonable jurists would not disagree with the district court's determination that the state court's conclusion was not an unreasonable application of federal law. We deny a COA on this issue.

## D. Ineffective Assistance of Counsel

Cantu's final two arguments are both framed as claims of ineffective assistance of counsel. First, he asserts that he received ineffective assistance because his trial counsel failed to object on due process grounds—though counsel did object on evidentiary grounds—to the court's admitting photographs of the victims' bodies and of the crime scene as found by the investigators. Second, he argues that his trial counsel rendered ineffective assistance for failing to object to the prosecution's sentencing-phase argument urging the jurors to look at the admitted photographs. Both of these claims are governed by the familiar *Strickland* standard.

Under *Strickland v. Washington*, Cantu must show: (1) that his trial counsel's performance was deficient; and (2) that the deficient performance

prejudiced him. *See* 466 U.S. 668, 687 (1984). To meet the first required showing, Cantu must demonstrate that his counsel's representation was unreasonable as determined by prevailing professional norms in light of the case's facts as viewed at the time of counsel's conduct and in light of our strong presumption that counsel rendered adequate assistance. *Id.* at 688, 690. To meet the second required showing, Cantu must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, and, notably, "the mere possibility of a different outcome is not sufficient to prevail on [this] prong," *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. With this standard in mind, we turn to Cantu's specific ineffectiveness arguments.

### 1.    Failure To Raise A Due Process Objection To Photographs

Cantu's first claim centers on his trial counsel's failure to raise a due process objection to the admissibility of victim and crime-scene photographs that depicted the gruesome results of Cantu's and his cohorts' conduct. The state court concluded that Cantu's counsel was not ineffective because admitting the evidence did not violate due process. To violate due process, an evidentiary ruling must result in a "denial of fundamental fairness," and improperly admitting evidence will only justify habeas relief "if the admission was a crucial, highly significant factor in the defendant's conviction." *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998).[3]

---

[3] Cantu argues that the latter standard in *Neal* is too onerous; however, he made no such argument to the district court in his habeas petition. Thus, we do not consider the argument on appeal. *See Johnson v. Puckett*, 930 F.2d 445, 448 (5th Cir. 1991) ("We have repeatedly held that a contention not raised by a habeas petitioner in the district court cannot be considered for the first time on appeal from that court's denial of habeas relief.").

The district court determined that the state court's conclusion was not an unreasonable application of federal law. It noted that "graphic crime scene photographs do not offend due process principles when they 'serve[] to illustrate and make more understandable the officers' testimony which described the [scene] and its condition, and the location and condition of the deceased's body and the nature and extent of the injuries to the deceased.'" *Cantu*, 2009 WL 275172, at *23 (alterations in original) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1039 (5th Cir. 1996)). Here, the district court explained, the prosecution introduced the photographs while doing just that—describing the condition of the corpses, explaining the process of identifying the bodies, and verifying the statements made by Cantu and others. Further, the trial court did not admit all of the prosecution's proffered photographs and instead engaged in a process of weighing the probative value of each photograph against its likely prejudicial effect. Finally and in the alternative, the district court determined that there was no reasonable probability of a different result had Cantu's counsel raised a due process objection to the photographs because other sources of evidence "painted a vivid image of Cantu's brutality" and otherwise amply supported a finding that Cantu committed capital murder. *Id.* at *24.

In his petition for COA, Cantu argues that admitting the photographs violated due process—and, therefore, his counsel was ineffective—because the prejudicial effect of the photos greatly outweighed their probative value. Further, he asserts that there exists a reasonable probability that the result of the proceeding was affected by the graphic nature of the photographs. These arguments are unavailing. First, as the district court recognized, admitting such graphic photographs does not offend due process when the photographs are used to add illustration to testimony describing the details of the crime, as was done here. *See Woods*, 75 F.3d at 1039. Second, given the extent of the other evidence supporting Cantu's conviction, reasonable jurists would not disagree with the

11

district court's determination that Cantu has not shown that he was prejudiced by his counsel's failure to raise a due process objection. We therefore deny a COA on this issue.

### 2. Failure To Object To Prosecution's Argument

Finally, Cantu contends that he received ineffective assistance because his trial counsel failed to object when the prosecution urged the jury to consider the graphic photographs in its sentencing-phase argument. After considering the prosecution's argument in the context of the argument made by Cantu, the district court determined that the state court did not unreasonably apply federal law in denying this claim. We conclude that reasonable jurists would not disagree on this matter.

During the closing arguments of the trial's sentencing phase, Cantu's counsel stated:

> Peter Cantu is not an animal. The State can talk all day long about what a horrible person he is and how these girls, those children . . . . Those children suffered a brutal killing. Well, this is a sanitized and civilized killing that we have for Peter Cantu. He is a child, he is eighteen, and that's what this is about. Are you going to kill him, because as we told you on voir dire he has a life sentence as soon as you found him guilty. Because we have this procedure set up, do we kill our children? Do we kill our children when you know they needed help, when you know they're a problem, when you know there are problems? . . . Don't kill that child. He had problems, he was sick, he is sick. Spare his life, please, ladies and gentlemen of the jury. Please spare his life. Thank you.

In the portion of the prosecution's argument that Cantu challenges, the prosecution stated:

> And if you care to, you can see the result of this defendant's handy work again. Open it up, look at it. I'm not going to show it to you. I suspect that it's something you will never ever forget if you never see these photos again, but if you want to see, if you want to start thinking about don't kill that child, don't kill that child, think

about the two children in here that all you got left of them is right
here.

Just prior to that statement, the prosecution set up its argument by asserting
that "[t]he State has brought to you a lot of evidence to show you what this
defendant is like, who he really is. He is not an eighteen year old child that
didn't know what he was doing. . . . It's not a question of you killing this child."
And finally, the prosecution closed by reiterating:

> Think about how cold the man is, how cowardly he is, how
> cruel he is. Think about the ordeal of those two young girls right
> here. How they were mutilated, brutalized for perhaps as much as
> an hour. You know what damage was done to their bodies. Think
> about how their death was not instantaneous. . . . Cold, cruel,
> inhuman, and yet he has his attorney saying don't kill the child. Do
> you think that if Mr. Ertman or Mr. Pena or Mrs. Ertman or Mrs.
> Pena had come on up on the scene and said to Peter and his gang
> don't kill that child, don't kill that child, would he have listened?
> No, not in the least. They didn't have the luxury of having anybody
> intervene for them, and he wants you to don't kill this child. Look
> at the evidence. Very brutal, very slow, tortured, a senseless killing.
> Done purely to prevent him being caught for the crimes that had
> been done.

The state court concluded that Cantu's counsel's performance was not
deficient because the prosecution's statements were proper under Texas law and
did not inject new or harmful facts into the trial in light of the record as a whole.
The district court, in turn, evaluated the state court's conclusion that the
arguments were proper under the due process standard. *See Darden v.
Wainwright*, 477 U.S. 168, 181 (1986) ("[T]he appropriate standard of review for
[a claim challenging the prosecution's closing argument] on writ of habeas
corpus is the narrow one of due process, and not the broad exercise of
supervisory power." (internal quotation marks omitted)).

In reviewing the prosecution's argument, "[t]he relevant question is
whether the prosecutors' comments so infected the trial with unfairness as to

make the resulting conviction a denial of due process." *Id.* (internal quotation marks omitted). That standard is applied in light of the Court's recognition that the "State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).

Here, the district court determined that the state court did not unreasonably apply federal law in concluding that the prosecution's argument was proper and, therefore, that Cantu's counsel's performance was not deficient in failing to object to the argument. The district court noted that the prosecution was seeking to counteract Cantu's mitigating evidence by bringing attention to the victims and comparing the legal process by which Cantu might receive a death penalty to the brutality of the murders committed by Cantu. In making this comparison, the prosecution referred to the challenged photographs. The district court recognized that the prosecution's arguments were harsh, but it concluded that the arguments did not render the trial fundamentally unfair. Finally and in the alternative, the district court noted that Cantu was not prejudiced by his counsel's failure to object because of the significant amount of punishment-phase evidence demonstrating Cantu's violence and the slim chance of his rehabilitation.

Other than reurging his assertion that his trial counsel rendered ineffective assistance for failing to object to the prosecution's argument, Cantu raises no additional argument in his petition for COA. After reviewing the district court's thoughtful consideration of the issue, we cannot say that reasonable jurists would disagree with its determination that the state court's conclusion was a reasonable application of federal law. Thus, we deny a COA on this final issue.

14

## IV. CONCLUSION

For the foregoing reasons, Cantu's application for a COA is DENIED.