397 So.2d 910 (1981)
Stephen Todd BOOKER, Appellant,
v.
STATE of Florida, Appellee.
No. 55568.
Supreme Court of Florida.
March 19, 1981.
Rehearing Denied June 2, 1981.
*912 Stephen N. Bernstein, Asst. Public Defender, Gainesville, for appellant.
Jim Smith, Atty. Gen., and Charles A. Stampelos, Asst. Atty. Gen., Tallahassee, for appellee.
ADKINS, Justice.
This is an appeal from a judgment adjudicating defendant guilty of murder in the first degree and an order imposing a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972).
Defendant was also adjudged guilty of sexual battery and burglary, receiving a sentence of fifty-five years for sexual battery and thirty-five years for burglary.
The victim, an elderly woman, was found dead in her apartment in Gainesville, Florida. The cause of death was loss of blood due to several knife wounds in the chest area. Two knives, apparently used in the homicide, were embedded in the body of the victim. A pathologist located semen and blood in the vaginal area of the victim and concluded that sexual intercourse had occurred prior to death. The apartment was found to be in a state of disarray; drawers were pulled out and their contents strewn about the apartment. Fingerprints of the defendant were positively identified as being consistent with latent fingerprints lifted from the scene of the homicide. The defendant had a pair of boots which had a print pattern similar to those seen by an officer at the scene of the homicide.
Test results indicated that body hairs found on the clothing of the defendant at the time of his arrest were consistent with hairs taken from the body of the victim.
After being given the appropriate warnings, the defendant made a statement, speaking as an alternative personality named "Aniel." The "Aniel" character made a statement that "Steve had done it."
The indictment returned by the grand jury charged defendant with murder in the first degree, sexual battery, and burglary. A motion for mental examination and notice of defense of insanity were filed on behalf of the defendant and he was examined by three psychiatrists.
The defendant entered a plea of not guilty, but did not testify during the guilt phase of the trial. He was found guilty on all three counts of the indictment.
*913 During the sentencing phase of the proceedings the defendant testified. At the conclusion of his testimony, and against the advice of his attorney, the defendant made a statement to the jury saying, "A defendant found guilty of such a crime should receive the death penalty." The jury recommended the death penalty and defendant was sentenced to death. This appeal resulted.
The defendant contends that during the sentencing proceedings the court committed error in permitting the prosecutor to ask questions based on information gathered from court ordered psychiatric reports. The defendant argues that this violated his right against self-incrimination. During the sentence hearing the defendant testified on direct examination that he had "no recollection" as to what happened on the day of the homicide. He stated that he had been hospitalized eight times in the past. During the times that he was hospitalized from the age of thirteen until now, the defendant said he could not remember the reasons for being in the hospital. He testified that on three of the occasions his lack of memory was "the reason for being in the hospital." On cross-examination the defendant testified that he did not consider himself a violent person, but that he did have problems with acts of violence while in the service. He denied that he attempted to kill people, but admitted that while in Okinawa he robbed houses of prostitution and used a claw hammer with which to hit people. He admitted that he hit about five people. The prosecutor then asked defendant if he remembered "getting up feeling like he wanted to kill someone that day." His counsel objected at that point, contending that the prosecutor was seeking to elicit information contained in the reports of the psychiatrist and such information was privileged. The court ruled that the question went toward the defendant's lapse of memory on the day of the incident and was proper cross-examination. Finally, when asked if he thought about killing anyone that day, the defendant responded, "Sometime I did, but I gave up the idea because it was crazy."
The defendant recognizes that a court ordered psychiatric examination generally is not considered violative of defendant's right to freedom from compelled self-incrimination and that psychiatrists may render opinions concerning sanity based on factual statements made by the defendant. However, the defendant points out that direct testimony concerning the facts surrounding a crime is prohibited where ascertained from a compulsive mental examination. Defendant relies upon Parkin v. State, 238 So.2d 817 (Fla. 1970), in which we held that the trial court should prohibit a psychiatrist from testifying directly as to the facts surrounding the crime, where such facts have been elicited from the defendant during the course of a compulsory mental examination. We said that the state, in its inquiry of a court appointed psychiatrist, should not go beyond eliciting the opinion of the expert as to sanity or insanity and should not inquire as to information concerning the alleged offense provided by a defendant during his interview.
The defendant also cites McMunn v. State, 264 So.2d 868, 869 n. 2 (Fla. 1st DCA 1972), where the court labeled as objectionable the question to the defendant, "[w]hether or not at that time and place you told Dr. Nelson the details of what happened that night including firing the shot?" The court also said that later impeachment testimony through the person of Dr. Nelson, the examining psychiatrist, was inadmissible. The defendant contends that the cross-examination of him by the prosecutor during the sentencing proceedings was based primarily upon information obtained from the report of the psychiatrist. This being privileged information, he argues that it was not subject to disclosure by cross-examination of defendant after he had taken the witness stand.
In Parkin, supra, we pointed out that if a defendant's counsel opens the inquiry to collateral issues, or admissions, or guilt, the state's redirect examination properly could inquire within the scope opened by the defense. The defendant took the *914 stand during the sentence proceedings, and presented the issue of whether he could remember certain events. When the defendant chose to testify in his own behalf during the sentence proceedings, the issue of guilt had been decided adversely to him. A defendant who takes the stand as a witness in his own behalf occupies the same status as any other witness, and all the rules applicable to other witnesses are likewise applicable to him. Hoskins v. State, 70 Fla. 186, 69 So. 701 (1915); Faulkner v. State, 151 So.2d 17 (Fla. 2d DCA), cert. denied, 156 So.2d 389 (Fla. 1963). By taking the witness stand the defendant automatically subjected himself to cross-examination. Kilgore v. State, 271 So.2d 148 (Fla. 2d DCA 1972). A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).
During the cross-examination there was no reference made by the prosecutor to the psychiatrist or to the psychiatric reports. The defendant opened up the question of what he remembered and whether he did or did not remember certain things. The trial court was correct in ruling that the state attorney had a right to inquire as to what defendant remembered, as this was an issue presented by the defendant during the sentence proceedings. Furthermore, the record does not conclusively show that the state attorney secured this information from the psychiatric reports.
During the course of the trial the state introduced into evidence two photographs of the victim as she was found at the scene of the crime. The defendant had no objection to the first photograph showing the position of the victim and the manner in which she was found. The second photograph was similar to the first but a cloth had been removed from the victim so as to reveal a knife protruding through the victim's throat. The defendant says that this photograph was so prejudicial as to render it inadmissible.
Photographs are admissible if they properly depict the factual conditions relating to the crime and if they are relevant in that they aid the court and jury in finding the truth. Swan v. State, 322 So.2d 485 (Fla. 1975). The photograph was used in connection with testimony regarding the causes of death, Henninger v. State, 251 So.2d 862 (Fla. 1971); the nature and extent of the "force and violence" used to perpetrate the crimes, Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); and the premeditated and coldblooded intent of the defendant, Foster v. State, 369 So.2d 928 (Fla.), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979). The photograph was used for any or all of these three purposes, so making it relevant and admissible.
Investigator Terry lifted, among others, one particular set of latent fingerprints from a closet door located inside a bedroom of the victim's apartment. The latent fingerprints were placed on a card. The card was given by Terry to George Johnson, the latent examiner. Investigator Terry stated that the card was not in the same condition when it was introduced into evidence as when he lifted it. The fingerprint card was marked for identification. Investigator Terry did not make a similar comment regarding any other latent fingerprint card. George Johnson, the latent examiner, testified that he received the card from Investigator Terry; that he had the card in his custody until it was brought to court; and that it did not appear to be tampered with in any way. The trial judge enjoys wide discretion in areas concerning the admission of evidence. His ruling on the admissibility of evidence will not be disturbed unless an abuse of discretion is shown. Rodriguez v. State, 327 So.2d 903 (Fla. 3d DCA), cert. denied, 336 So.2d 1184 (Fla. 1976); Coppolino v. State, 223 So.2d 68 (Fla. 2d DCA 1968), appeal dismissed, 234 So.2d 120 *915 (Fla. 1969), cert. denied 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 794 (1970). The defendant has failed to show an abuse of discretion by the trial judge in admitting the card into evidence.
The defendant contends that a reasonable hypothesis of innocence exists on the question of whether or not actual physical force likely to cause bodily injury was used in the commission of the sexual battery. There was overwhelming circumstantial evidence demonstrating only one reasonable hypothesis, to wit: that defendant used force likely to cause serious bodily injury in the commission of the sexual battery. See Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Jones v. State, 332 So.2d 615 (Fla. 1976); Hallman v. State, 305 So.2d 180 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976).
The defendant seeks a reversal of his conviction of burglary with intent to commit larceny because the state failed to prove an intent to commit a crime. It is true that a conviction of burglary requires proof of an intent to commit the crime that was alleged. Rumph v. State, 248 So.2d 526 (Fla. 1st DCA 1971). There was no showing that any property was taken from the victim's home. In fact, cash in the amount of $370.00 was found in the home by police officers who arrived at the scene.
"Burglary" means entering or remaining in a structure or conveyance with the intent to commit an offense therein. § 810.02, Fla. Stat. (1977). In a trial on the charge of burglary, proof of the entering of such structure at any time stealthily and without the consent of the owner is prima facie evidence of entering with intent to commit an offense. § 810.07, Fla. Stat. (1977). The evidence shows that bureau drawers, metal boxes, and jewelry boxes were rummaged. The apartment was ransacked. From this evidence the jury could infer that the defendant was in search of valuables and that his object was to steal them. Walker v. State, 44 Fla. 466, 32 So. 954 (1902). See also Guerrero v. State, 289 So.2d 396 (Fla. 1974); conformed to 291 So.2d 103 (Fla. 3d DCA 1974). Intent, being a state of mind, must in most cases be inferred from the circumstances. Edwards v. State, 213 So.2d 274 (Fla. 3d DCA), cert. denied, 221 So.2d 746 (Fla. 1968). The circumstances in the case sub judice are open to only one reasonable interpretation, i.e., that the defendant entered the structure with intent to commit a larceny therein. The jury so concluded. The trial court did not instruct the jury on burglary with intent to commit grand larceny, so the charge was limited to the crime of breaking and entering the structure with the intent to commit petit larceny. The conviction of burglary is affirmed.
In attacking the death sentence the defendant says that the trial court improperly considered the alleged previous acts of violence brought out by the cross-examination of the defendant, for they were unauthorized aggravating factors. The state replies that the trial court considered only statutory aggravating circumstances. The findings of the trial judge read as follows:
MITIGATING CIRCUMSTANCES
(a) Whether the defendant has no significant history of prior criminal activity.

Finding:
As a juvenile, Booker came to the attention of authorities for assaultive tendencies, truancy and theft. He was committed at least once to the Youth Center in New York and was given six months probation. He began using drugs of all kinds except "speed" when he was 13 years of age.
The Defendant had one confirmed Army 15 involving violence to another.
On November 12, 1974, the Defendant was sentenced in the Circuit Court, Collier County, Florida to five years in the state penal institutions for the offense of Robbery (strong arm) [.]
(b) Whether the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance.

*916 Finding:
Booker knew and was able to understand the nature, quality, and wrongfulness of his acts on November 9, 1977; was able to understand the charges against him; and was able to adequately cooperate with and assist his counsel in his defense at trial.
Booker has been an antisocial, hostile, somewhat paranoid individual who learned at an early age that "he could easily obtain what he wanted by illegal means and that he could control others through fear and manipulation."
There was argument of counsel, but no evidence whatever of extreme mental or emotional disturbance during the commission of the murder. [Refer to mitigation finding (e).] (brackets in original).
(c) Whether the victim, LORINE DEMOSS HARMON, was a participant in the defendant's conduct or consented to the act(s)[.]

Finding:
The victim did not at any time nor in any way consent to or participate in the conduct of defendant and his acts.
(d) Whether the defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.

Finding:
Booker was not an accomplice. No one else was involved, directly or indirectly. He was the aggressive perpetrator of the burglary of the dwelling, the sexual battery, and the murder.
(e) Whether the Defendant acted under extreme duress or under the substantial domination of another person.

Finding:
The Defendant did not act under the domination  not to mention  substantial domination of another person. The "Aniel syndrome" whereby Booker claimed that "Aniel" did it is and was irrelevant, most likely self-serving, and the evidence is bereft of any believable fact that the Defendant was being dominated by "Aniel" or anyone. To the contrary, he was the manipulative master of his acts at the time of the crimes.
Though the Defendant consumed intoxicants before the murder and may have experienced the "Aniel' phenomenon afterward, there isn't any evidence that he was under extreme duress at the time of the crimes.
(f) Whether the capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

Finding:
At the time of the commission of the capital felony the Defendant's capacity to appreciate the criminality and to conform his conduct to requirements of law was not substantially impaired [Refer to mitigation finding (b).] (Brackets in original).
"(g) The age of the Defendant at the time of the crime."

Finding:
Booker was in his majority at the age of twenty-four years at the time of the crime(s). Therefore, age had no particular significance and is not a mitigating circumstance.
AGGRAVATION
(a) Whether the defendant was under sentence of imprisonment when the defendant committed the murder of which the defendant has been convicted.

Finding:
Booker was not under sentence of imprisonment when he committed the murder for which he has been convicted.
(b) Whether the defendant has previously been convicted of another capital felony or of a felony involving the use or threat of violence to the person.

Finding:
The defendant had been previously convicted of a felony involving the use of threat of violence to another.
(c) Whether, in committing the murder of which the defendant has been convicted, the defendant knowingly created a great risk of death to many persons.

*917 Finding:
The Court does not consider the above provision in the Statute applicable to the defendant as an aggravating circumstance.
(d) Whether the murder was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any burglary or rape.

Finding:
The stabbing which caused the death of LORINE DEMOSS HARMAN took place immediately after the vaginal penetration of her by the sex organ of STEPHEN TODD BOOKER. The other wounds took place while or immediately before and after completion of the crime of sexual battery. The capital murder also took place after Booker committed the felony of burglary of a dwelling as charged in Count III of the Indictment, and before he completed his flight from said crime.
(e) Whether the murder of which the defendant was convicted was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

Finding:
The murder was not committed for the latter of these purposes, but, among other reasons, was committed for the purpose of avoiding or preventing a lawful arrest. [See aggravation paragraph below (h).] (Brackets in original).
(f) Whether the murder of which the defendant has been convicted was committed for pecuniary gain.

Finding:
There isn't evidence that the capital murder was committed for pecuniary gain though Booker did obtain personal property of his victim, and he thoroughly searched her apartment for whatever he wanted.
(g) Whether the murder of which the defendant has been convicted was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.

Finding:
Not applicable as an aggravating circumstance.
(h) Whether the murder of which the defendant was convicted was especially heinous, atrocious or cruel.

Finding:
LORINE DEMOSS HARMAN was 94 years of age at the time of her death. She was active, alert, spry, enjoyed playing bridge on a regular basis with her friends, participated in church and other wholesome activities, preferred to take care of herself in her own apartment, to come and go in her pursuit of happiness and looked forward, as most others do, to the enjoyment of life.
Booker did not know Mrs. Harman. When she returned from visiting with friends, the defendant severely beat, wounded, raped and finally killed her, but his aggressive, antisocial hatred had not yet been satiated, hence, she was stabbed in the throat before death and after suffering the horrible indignities inflicted upon a lady who had not previously confronted such a gross animal-like fiend.
It is manifest from her picture in death that she suffered greatly in body and mind, knowing that her death was near and by reason of degrading inhuman cruelty.
There were seven stab wounds in her chest with one knife left embedded to its handle. There were no fewer than two stabs in her throat with a butcher knife left sticking through that part of her anatomy. There were other wounds and contusions with internal bleeding consistent with the outrageous beating of a 90-pound female by a strong overpowering male[.] Beyond gainsay, this cold, calculated capital murder was especially heinous, atrocious and cruel.
ACCORDINGLY, the Court further finds that there are insufficient mitigating circumstances to outweigh the aggravating circumstances which are sufficient to require the pronouncement of sentence hereinafter made. *918 The Court further finds that considering the facts and circumstances of this case a sentence less than that hereinafter pronounced would be insufficient, as Defendant himself stated.
There were no mitigating circumstances to be weighed against the aggravating circumstances. The defendant's reliance on Elledge v. State, 346 So.2d 998 (Fla. 1977), is misplaced because the record reveals that the trial court did not take into account in the "weighing process" any conceivable non-statutory aggravating circumstances. The questions posed to the defendant during cross-examination were used to negate a mitigating circumstance, i.e., that defendant had a significant history of prior criminal activity. See Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Knight v. State, 338 So.2d 201 (Fla. 1976); Meeks v. State, 336 So.2d 1142 (Fla. 1976). When the defendant elects to testify during the sentencing proceedings, it is appropriate for the prosecutor to cross-examine him concerning previous criminal activity. Unless this mitigating factor is negated, there would be a presumption that defendant had not engaged in any previous criminal activity. It is apparent from an examination of the findings of the court that this evidence was not considered as an aggravating factor. The principles announced in Elledge, supra, and Mikenas v. State, 367 So.2d 606 (Fla. 1978), are not applicable.
The jury recommended a sentence of death. The trial judge recited that he found no mitigating circumstances. The trial court found several aggravating circumstances, including the factor that the murder of which defendant was convicted was especially heinous, atrocious, and cruel. The sentence of death was proper.
Contrary to defendant's contention, we have held that section 921.141, Florida Statutes (1977), does not violate the requirements of article V, section 2(a), Florida Constitution, because it attempts to govern practice and procedure. Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).
In light of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 923 (1978), the defendant says that Florida's death penalty statute is too narrowly defined in the range of mitigating circumstances which the sentencing authority may consider. This argument was rejected by this Court in Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979). Also, the directions given to the judge and the jury by the Florida statute were sufficiently clear and precise to enable the various aggravating circumstances to be weighed against the mitigating ones. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). See also State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).
Finally, we reject defendant's contention that death by electrocution is cruel and unusual punishment. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947); Spinkellink v. Wainwright, supra.
The judgments and sentences of the lower court are affirmed.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.