[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 19, 2012
JOHN LEY
CLERK

_____

No. 10-14966

_____

D.C. Docket No. 1:08-cv-00143-RS

STEPHEN BOOKER,

Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 19, 2012)

Before DUBINA, Chief Judge, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Stephen Booker, a prisoner on Florida's death row, appeals the district

court's denial of his 28 U.S.C. § 2254 petition challenging his capital murder

conviction. We issued a Certificate of Appealability on one issue: Whether the

Florida Supreme Court's decision denying Booker's claim that the trial court erred

when refusing to instruct the jury about other consecutive sentences was contrary

to, or involved an unreasonable application of, the Supreme Court's decision in

*Simmons v. South Carolina*, 512 U.S. 154, 114 S. Ct. 2187 (1994). Booker bases

his claim on the trial court's refusal to inform the advisory jury of his multiple

terms of incarceration that he would have to serve before becoming eligible for

parole.[1] Finding the state court's ruling to be neither contrary to nor an

unreasonable application of *Simmons* and its progeny, we affirm the district court.

I

In December of 1977, the State of Florida charged Booker with first-degree

murder, sexual battery, and burglary related to the death of Lorine Demoss

Harmon. On direct appeal, the Florida Supreme Court summarized the facts of the

crime as follows:

> The victim, an elderly woman, was found dead in her apartment
> in Gainesville, Florida. The cause of death was loss of blood due to

---

[1] The State questions whether Booker would have to satisfy his other terms of
imprisonment as a prerequisite to parole eligibility. We assume for purposes of this appeal that
Booker correctly states the issue of parole eligibility because, even construing this issue in his
favor, habeas relief is not warranted.

several knife wounds in the chest area. Two knives, apparently used in the homicide, were embedded in the body of the victim. A pathologist located semen and blood in the vaginal area of the victim and concluded that sexual intercourse had occurred prior to death. The apartment was found to be in a state of disarray; drawers were pulled out and their contents strewn about the apartment. Fingerprints of the defendant were positively identified as being consistent with latent fingerprints lifted from the scene of the homicide. The defendant had a pair of boots which had a print pattern similar to those seen by an officer at the scene of the homicide.

Test results indicated that body hairs found on the clothing of the defendant at the time of his arrest were consistent with hairs taken from the body of the victim.

After being given the appropriate warnings, the defendant made a statement, speaking as an alternative personality named "Aniel." The "Aniel" character made a statement that "Steve had done it."

*Booker v. State*, 397 So. 2d 910, 912 (Fla. 1981). The jury found Booker guilty on all three counts. *Id.* The jury recommended that Booker be sentenced to death, and the trial judge imposed that sentence. *Id.* at 913.

The Florida Supreme Court affirmed Booker's convictions and sentences on direct appeal, *see id.* at 918, and denied postconviction relief, *Booker v. Dugger*, 520 So. 2d 246, 249 (Fla. 1988) (per curiam). On habeas review, however, the federal district court found that prejudicial constitutional error required that his death sentence be vacated, and this court agreed. *Booker v. Dugger*, 922 F.2d 633,

3

633–34 (11th. Cir. 1991).  On remand, the state court held a new penalty phase hearing in March of 1998.  *See Booker v. State*, 773 So. 2d 1079, 1083 (Fla. 2000) (per curiam).  At the time of his resentencing, Booker was serving a consecutive term of imprisonment of one-hundred years for the other crimes involving the death of the victim as well as the assault of a corrections officer committed while in prison.  Applying Florida law as enacted at the time of Booker's conviction, the jury could recommend either the death penalty or life with the possibility of parole after serving twenty-five years.

After hearing from both sides, the jury began to confer about Booker's sentence.  Soon after they began to deliberate, the jury sent a question to the sentencing court asking: "Will time already served be considered as gain time in a life sentence without possibility of parole for 25 years?"  The trial court answered: "You must not consider issues not presented to you for your consideration in these proceedings.  You must base your advisory recommendation on the evidence presented to you in this proceeding and on the law on which you have been instructed."  By a vote of eight to four, the jury again recommended that Booker be sentenced to death, and the trial judge followed that recommendation.  *Id.* at 1086.  The Florida Supreme Court affirmed Booker's sentence on direct appeal.

4

*Id.* at 1096.[2]

In July of 2008, Booker filed the instant § 2254 petition in federal district court. The district court denied relief, and we granted a Certificate of Appealability on the *Simmons* issue, which the Florida Supreme Court denied on the merits on direct appeal.

II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1218, prohibits federal courts from granting habeas relief unless the state court's adjudication of the claim for relief "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 1172 (2003). A state court adjudication is "contrary to" federal law in two situations: "(1) 'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or (2) 'if

---

[2] Booker also timely filed a motion to vacate his sentence pursuant to Florida Rule of Criminal Procedure 3.851. Relief was ultimately denied on all claims, *Booker v. State*, 969 So. 2d 186, 200–01 (Fla. 2007) (per curiam), and none of those issues is relevant to this appeal.

the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1346 (11th Cir. 2011) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S. Ct. 1495, 1519–20 (2000)).  An unreasonable application of clearly established federal law permits habeas relief where "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523.  The Supreme Court recently clarified that relief under AEDPA's "unreasonable application" prong is not warranted "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785–86 (2011).

III

Booker argues that the state court violated his due process rights when it refused to instruct the jury regarding his other consecutive sentences, which he claims functionally barred him from ever being paroled because those sentences would have to be served prior to his release.  The Florida Supreme Court adjudicated his claim on the merits and explained:

6

In *Nixon v. State*, 572 So. 2d 1336, 1345 (Fla. 1990), we held that a capital murder defendant, who had been convicted of three additional noncapital offenses carrying lengthy maximum penalties, was not entitled to an instruction informing the jury of the maximum sentences that could be imposed for the other crimes. *See also Franqui v. State*, 699 So. 2d 1312, 1326 (Fla. 1997) (following *Nixon*); *Marquard v. State*, 641 So. 2d 54, 57–58 (Fla. 1994) (same); *Gorby v. State*, 630 So. 2d 544, 548 (Fla. 1993) (stating that, according to *Nixon*, "during the penalty phase, there is no need to instruct the jury on the penalties for noncapital crimes a defendant has been convicted of"). Booker argues that *Nixon* is not controlling here because, unlike the defendant in that case, Booker has already been sentenced for the crimes other than the first-degree murder conviction. In making this argument, however, Booker overlooks several of our prior decisions applying *Nixon* to facts substantively identical to those in this case.

In *Campbell v. State*, 679 So. 2d 720, 722 (Fla. 1996), the defendant directly appealed a death sentence imposed on him after a resentencing hearing. After finding that the prosecutor had committed various acts of misconduct during the hearing, we reversed the defendant's sentence and again remanded for resentencing. *See id.* at 724–25. Before doing so, however, we addressed "several additional claims to aid in resentencing." *Id.* at 725. Particularly relevant to this case, we stated:

> At the time of resentencing, Campbell had already been sentenced to consecutive life terms for other related crimes and now claims that the court erred in preventing him from pointing this out to prospective jurors and in declining to instruct the jury on this. This issue has already been decided adversely to Campbell. *See, e.g.*, *Nixon v. State*, 572 So. 2d 1336 (Fla. 1990), *cert. denied*, 502 U.S. 854, 112 S. Ct. 164 (1991). We find no error.

679 So. 2d at 725. Thus, in *Campbell*, we clearly determined that *Nixon* is controlling in cases such as this.

7

More recently, in *Bates v. State*, 750 So. 2d 6 (Fla. 1999), we again applied our holding in *Nixon* to facts substantively identical to those presented here. In *Bates*, the defendant appealed from a death sentence imposed on resentencing for a murder that occurred in 1982. *See id.* at 8. Relevant to this case, we stated the following in rejecting Bates' claim that the jury should have been informed of his previously imposed sentences:

> [A]ppellant contends that the fact that he was already sentenced to two life terms plus fifteen years and that those sentences were to run consecutively to the sentence for the murder was relevant mitigation "in the sense that [it] might serve as a basis for a sentence less than death." We have rejected similar arguments in *Franqui v. State*, 699 So. 2d 1312, 1326 (Fla. 1997); *Marquard v. State*, 641 So. 2d 54 (Fla. 1994); and *Nixon v. State*, 572 So. 2d 1336 (Fla. 1990).
>
> These other sentences are not relevant mitigation on the issue of whether appellant will actually remain in prison for the length of those sentences. The length of actual prison time is affected by many factors other than the length of the sentence imposed by the sentencing court. The introduction of this evidence would open the door to conjecture and speculation as to how much time a prisoner serves of a sentence and distract jurors from the relevant issue of what is the appropriate sentence for the murder conviction.

*Bates*, 750 So. 2d at 11. Accordingly, based on our prior decisions, we reject Booker's claim here on the merits.

*Booker*, 773 So. 2d at 1087–88.[3]

---

[3] Although the state court did not refer to any Supreme Court precedent in disposing of Booker's claim, AEDPA deference is not conditioned on the state court's citation of federal authority. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (per curiam).

In *Simmons v. South Carolina*, the Supreme Court held that, when future dangerousness is an issue at sentencing and the defendant would be ineligible for parole under a life sentence, due process requires that a jury be informed of the defendant's parole ineligibility. 512 U.S. at 168–69, 114 S. Ct. at 2196 (plurality opinion); *id.* at 177–78, 114 S. Ct. at 2201 (O'Connor, J., concurring). At the same time, the Court explained that nothing in the Constitution prevented the State from informing the jury about parole eligibility if the defendant is eligible under state law. *Id.* at 168, 114 S. Ct. at 2196 (plurality opinion); *id.* at 176, 114 S. Ct. at 2200 (O'Connor, J., concurring).

In 2000, the Court clarified that *Simmons* did not endorse a functional approach to instruction on parole ineligibility. In *Ramdass v. Angelone*, the Court ruled that due process did not require the jury to be informed that the defendant would have been ineligible for parole under the state's "three strikes" law.[4] 530 U.S. 156, 159, 120 S. Ct. 2113, 2116 (2000) (plurality opinion) ("*Simmons* is inapplicable to petitioner since he was not parole ineligible when the jury considered his case . . . ."); *id.* at 180, 120 S. Ct. at 2127 (O'Connor, J.,

---

[4] At the time of his capital sentencing, Ramdass had been found guilty but not yet sentenced for the crime that would be the "third strike" to render him parole ineligible. *Ramdass*, 530 U.S. at 160–61, 120 S. Ct. at 2117. Under state law, that conviction was not final until the sentencing had been imposed. *Id.* at 160, 120 S. Ct. at 2117.

concurring) ("Ramdass . . . was not ineligible for parole when the jury considered his sentence . . . ."). Because life with parole was still technically a legal possibility at the time of Ramdass's capital sentencing proceeding, the Court found that *Simmons* did not control. *See id.* at 181, 120 S. Ct. at 2128 (O'Connor, J., concurring) ("*Simmons* entitles the defendant to inform the capital sentencing jury that he is parole ineligible where the only alternative sentence to death is life without the possibility of parole. And unlike [Simmons], Ramdass *was* eligible for parole under state law at the time of his sentencing.").

The Supreme Court has since extended and clarified *Simmons* in two cases.[5] In *Shafer v. South Carolina*, the Court faced a situation where South Carolina changed its death penalty statute in the wake of *Simmons* to preclude parole eligibility for capital offenses. 532 U.S. 36, 46 n.3, 121 S. Ct. 1263, 1270 (2001). The Court reaffirmed *Simmons* and held that "whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's new scheme, due process requires that the jury be informed that a life sentence carries no possibility of parole." *Id.* at 51, 121 S. Ct. at 1273. Next, *Kelly v. South Carolina* extended the rule of parole ineligibility to sentencing proceedings in which future

---

[5] Although neither case was decided at the time of the Florida Supreme Court's decision, they clarify that *Simmons* has never been interpreted to carry the weight that Booker attributes to it.

dangerousness is implied. 534 U.S. 246, 255–57, 122 S. Ct. 726, 732–33 (2002).

We do not read *Simmons* or its progeny to clearly establish that Booker was entitled to the instruction he sought in this case. Moreover, the Supreme Court's *Ramdass* decision compels the conclusion that the Florida Supreme Court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law. *Simmons* does not control where the defendant is statutorily *eligible* for release on parole. *See Ramdass*, 530 U.S. at 181, 120 S. Ct. at 2128 (O'Connor, J., concurring). Moreover, *Ramdass* rejected the functional approach to parole ineligibility that Booker urges us to adopt here. *See Campbell v. Polk*, 447 F.3d 270, 288–89 (4th Cir. 2006) (detailing the practical problems associated with a functional analysis of parole eligibility and declining to adopt that approach); *see also Cantu v. Quarterman*, 341 F. App'x 55, 59 (5th Cir. 2009) (per curiam) (denying a Certificate of Appealability on petitioner's claim that the trial court erred in refusing to inform the jury that petitioner would not be eligible for parole for thirty-five years if sentenced to life imprisonment). Even if the state court's resolution of this claim "clearly violates the *spirit* of . . . *Simmons*," *Booker*, 773 So. 2d at 1097 (Anstead, J., dissenting in part) (emphasis added), that does not mean that it constitutes an unreasonable application of *clearly established* federal law, which thus far has only addressed jury instructions

11

in the circumstance of statutory parole ineligibility.

At oral argument, Booker relied more heavily on *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197 (1977), and *Skipper v. South Carolina*, 476 U.S. 1, 106 S. Ct. 1669 (1986). In *Gardner*, the Court considered the constitutionality of "a capital-sentencing procedure which permits a trial judge to impose the death sentence on the basis of confidential information which is not disclosed to the defendant or his counsel." 430 U.S. at 358, 97 S. Ct. at 1205 (plurality opinion). In four separate opinions, the Court ruled that a death sentence imposed under those circumstances was unconstituitonal. *Id.* at 351, 97 S. Ct. at 1200 (finding a due process violation); *id.* at 364, 97 S. Ct. at 1208 (White, J.) (finding an Eighth Amendment violation); *id.* (Blackmun, J.) (concurring based on precedent); *id.* (Brennan, J.) (finding a due process violation). In *Skipper*, the Court addressed whether the defendant was entitled to present the jury with mitigating evidence about his good behavior while in prison to illustrate his temperament and adaptability to prison life. 476 U.S. at 4, 106 S. Ct. at 1671. The Court held that such evidence could not be excluded from the jury's consideration. *Id.* at 8–9, 106 S. Ct. at 1673. It is evident that neither *Gardner* nor *Skipper* presented an issue comparable to instructing on parole eligibility. As a result, they do not clearly establish law with respect to the necessity of an instruction to inform the jury of

12

the length of a defendant's likely term of imprisonment.

In sum, Booker cannot prevail on his claim for relief. None of the Supreme Court precedent upon which he relies illustrates that the Florida Supreme Court rendered a decision that was contrary to, or an unreasonable application, clearly established law under 28 U.S.C. § 2254(d).

**AFFIRMED.**