# Supreme Court of Florida

————

No. SC21-763

————

**STEPHEN TODD BOOKER,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

February 3, 2022

PER CURIAM.

Stephen Todd Booker—a prisoner under sentence of death—appeals the trial court's summary denial of his sixth successive motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.851.[1]  We affirm.

## I.    Background

In 1978, Booker broke into ninety-four-year-old Lorine Harmon's home and then raped and murdered her.  We

———————

1.  We have jurisdiction.  *See* art. V. § 3(b)(1), Fla. Const.

summarized the facts surrounding the murder and ensuing investigation as follows:

> The victim, an elderly woman, was found dead in her apartment in Gainesville, Florida. The cause of death was loss of blood due to several knife wounds in the chest area. Two knives, apparently used in the homicide, were embedded in the body of the victim. A pathologist located semen and blood in the vaginal area of the victim and concluded that sexual intercourse had occurred prior to death. The apartment was found to be in a state of disarray; drawers were pulled out and their contents strewn about the apartment. Fingerprints of [Booker] were positively identified as being consistent with latent fingerprints lifted from the scene of the homicide. [Booker] had a pair of boots which had a print pattern similar to those seen by an officer at the scene of the homicide.
> Test results indicated that body hairs found on the clothing of [Booker] at the time of his arrest were consistent with hairs taken from the body of the victim.
> After being given the appropriate warnings, [Booker] made a statement, speaking as an alternative personality named "Aniel." The "Aniel" character made a statement that "Steve had done it."

*Booker v. State*, 397 So. 2d 910, 912 (Fla. 1981).

Following Booker's arrest, the State charged him with first-degree murder, sexual battery, and burglary. Booker pled not guilty, and his case proceeded to trial. In establishing its case against Booker, the State relied on several pieces of forensic evidence. As relevant here, the State called FBI Agent Robert Neil—

- 2 -

a microscopic hair comparison analyst. Agent Neil gave testimony on the significance of the hair fragments, which police found on and around the victim. During Agent Neil's direct examination, the State asked him how the hair fragments connected Booker to the crime, resulting in the following exchange:

> [Prosecutor:] Let me know show you State's Exhibit 51 again previously identified as a black hair removed from the vagina of the deceased. Did you attempt to compare that with the known pubic hair samples of the defendant in this case[?]
> [Agent Neil:] Excuse me. *I had to review my notes a little bit to refresh my memory.* I found a black head hair fragment in Exhibit 51 which I can identify as being from a person of the black race. However, due to the limited size, I cannot go any further than that with respect to stating whether or not it could have come from a particular individual in this case, Mr. Booker.

(Emphasis added.)

In addition to his testimony, Agent Neil also wrote a report summarizing his findings, which the State provided to Booker in discovery. The State referenced Agent Neil's testimony and his report in its closing argument summarizing the evidence linking Booker to the crimes.

Ultimately, the jury convicted Booker of each charged offense and recommended a sentence of death for Harmon's murder.

Accepting that recommendation, the judge sentenced Booker to death.

On direct appeal, we affirmed Booker's convictions and sentences in all respects. However, the Eleventh Circuit Court of Appeals later vacated Booker's death sentence. *Booker v. Dugger*, 922 F.2d 633, 636 (11th Cir. 1991). After the new penalty phase, a jury again recommended a sentence of death, which the trial court accepted. We affirmed the sentence, which became final in 2001. *Booker v. Florida*, 532 U.S. 1033, 1033 (2001) (denying petition for certiorari review).

Since that time, Booker has sought postconviction relief in both state and federal courts, without success. *See Booker v. State*, 969 So. 2d 186 (Fla. 2007); *Booker v. Fla. Dep't of Corr.*, 684 F.3d 1121 (11th Cir. 2012); *Booker v. State*, 252 So. 3d 723 (Fla. 2018).

This case involves Booker's most recent postconviction challenge which focuses on the microscopic hair comparison evidence presented at his trial. While pursuing this challenge, Booker obtained a 2013 report from the Department of Justice (DOJ), secured Agent Neil's report and handwritten notes, and retained a microscopist. The microscopist, Jason Beckert, reviewed

the report and notes, police reports about the crime, as well as scientific studies regarding microscopic hair comparison analysis. He then generated a report, summarizing scientific conclusions regarding the unreliability of microscopic hair comparison analysis, and opining that Agent Neil's handwritten notes conflicted with his trial testimony.

Based on the foregoing investigation, Booker filed a successive postconviction motion raising two claims. He argues that the State suppressed Agent Neil's handwritten notes as well as the scientific unreliability of his trial testimony in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Alternatively, Booker asserts that Agent Neil's notes and Beckert's report constitute newly discovered evidence under *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998).

Regarding Booker's *Brady* claim, the trial court found that Agent Neil openly relied on the notes during his testimony, and thus, Booker should have been aware of the notes and could have obtained them at that time.[2] The trial court rejected Booker's newly

2. The trial court further found that Agent Neil's handwritten notes did not constitute favorable evidence and that Booker suffered no prejudice from their nondisclosure.

discovered evidence claim on similar grounds. Having rejected both claims, the court denied the motion.

This appeal follows.

## II.   Analysis

Booker argues that the trial court erred in summarily denying his successive postconviction motion. We disagree.

A trial court should hold an evidentiary hearing on a rule 3.851 motion where "the movant makes a facially sufficient claim that requires a factual determination." *Rogers v. State*, 327 So. 3d 784, 787 (Fla. 2021) (quoting *Pardo v. State*, 108 So. 3d 558, 560 (Fla. 2012)).[3] With this principle in mind, we now assess Booker's claims.

To establish a *Brady* violation, Booker must show "(1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced." *Sweet v. State*, 293 So. 3d 448, 451 (Fla. 2020) (quoting *Dailey v. State*, 283

---

3. We review the summary denial of a postconviction motion de novo. *Boyd v. State*, 324 So. 3d 908, 913 (Fla. 2021) (citing *Tompkins v. State*, 994 So. 2d 1072, 1081 (Fla. 2008)).

So. 3d 782, 789 (Fla. 2019)). For *Brady* purposes, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Mordenti v. State*, 894 So. 2d 161, 170 (Fla. 2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 175 (quoting *Guzman v. State*, 868 So. 2d 498, 506 (Fla. 2003)).

As we have held, the defendant carries the burden to prove each element of his *Brady* claim. *See Hurst v. State*, 18 So. 3d 975, 988 (Fla. 2009). Thus, the trial court may summarily deny a *Brady* claim where the motion, files, and record conclusively refute any of the three *Brady* prongs. *See* Fla. R. App. P. 3.851(f)(5)(B); *Boyd*, 324 So. 3d at 913; *Morris v. State*, 317 So. 3d 1054, 1071 (Fla. 2021); *Jimenez v. State*, 265 So. 3d 462, 474 (Fla. 2018).

As a threshold matter, "[t]here is no *Brady* violation where the information is equally accessible to the defense and the prosecution." *Morris*, 317 So. 3d at 1071 (alteration in original) (quoting *Peede v. State*, 955 So. 2d 480, 497 (Fla. 2007)).

- 7 -

Here, the trial transcript demonstrates that Agent Neil expressly used his handwritten notes to refresh his recollection during his direct examination. Consequently, Booker's counsel could have examined the notes at that time. Therefore, the record conclusively refutes Booker's claim that the State suppressed the notes. *See Provenzano v. State*, 616 So. 2d 428, 430 (Fla. 1993) (finding no suppression where the State's expert referenced his notes at trial and used them while testifying).[4]

For similar reasons, Booker's newly discovered evidence claim also fails. Under *Jones*, to establish that evidence is newly discovered, the movant must establish that "(1) the evidence was unknown by the trial court, party, or by counsel at the time of trial, and it must appear that [the] defendant or his counsel could not have known of it by the use of diligence, and that (2) the evidence is

---

4. The right to examine the items a witness uses to refresh his recollection existed at the time of Booker's original trial. *See Allen v. State*, 243 So. 2d 448, 449-50 (Fla. 1st DCA 1971) (" 'The opposite party in both criminal and civil cases has a right to see and examine the memorandums [sic] used by a witness, so as to be in a position to cross-examine the witness in regard to the testimony given on direct examination'. . . . [B]asic principles of fair play . . . require that the opposite party be permitted to examine the notes . . . so that the accuracy of his statements may be verified." (quoting 35 Fla. Jur. *Witnesses* § 180, at 279 (1961))).

of such a nature that it would probably produce an acquittal on retrial." *Smith v. State*, 46 Fla. L. Weekly S310, S317 (Fla. Oct. 21, 2021) (citing *Jones*, 709 So. 2d at 521). Neither Agent Neil's notes nor Jason Beckert's report satisfies this standard.

Booker has known about Agent Neil's notes since his original trial. Thus, through reasonable diligence—such as asking to review the notes—Booker's counsel could have discovered this evidence over 40 years ago. *See Dailey*, 283 So. 3d at 790 (denying newly discovered evidence claim where the defendant could have discovered the allegedly exculpatory evidence earlier).

Beckert's report does not constitute newly discovered evidence, either. As the report itself states, "[i]t has been recognized since the dawn of the field [of microscopic hair comparison analysis] that individualization of hairs is not possible through microscopy alone." Thus, the information Booker asserts is newly discovered has been available at least since the time of his original trial. This fact alone demonstrates that the report is not newly discovered under *Jones*. *See Martin v. State*, 322 So. 3d 25, 38 (Fla. 2021) ("*Jones* claims . . . are premised on an allegation that the jury did not hear previously *unavailable* evidence material to guilt or innocence, and that the

introduction of such evidence would probably have led to the defendant's acquittal.") (emphasis added)).[5]

In sum, Booker's *Brady* and *Jones* claims lack merit.

### III.  Conclusion

For the reasons given above, we affirm the trial court's order summarily denying Booker's sixth postconviction motion.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Alachua County,
    William E. Davis, Judge – Case No. 011977CF002332AXXXXX

Linda McDermott and Christine Yoon, Capital Habeas Unit, Office of the Federal Public Defender, Northern District of Florida, Tallahassee, Florida,

    for Appellant

---

5.  Additionally, Beckert's report merely offers a new expert opinion on studies that have been available for decades.  This Court has found that such new opinions do not constitute newly discovered evidence.  *See Asay v. State*, 210 So. 3d 1, 23 (Fla. 2016).  ("Merely obtaining a new expert to review the same records does not create newly discovered evidence."); *see also Schwab v. State*, 969 So. 2d 318, 325 (Fla. 2007) ("[T]his Court has not recognized 'new opinions' or 'new research studies' as newly discovered evidence.").

Ashley Moody, Attorney General, and Jason W. Rodriguez, Assistant Attorney General, Tallahassee, Florida,

for Appellee